UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ATLANTIC ACQUISITIONS, LLC, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 12-10271-JLT |
| | * | |
| J.H. REID GENERAL CONTRACTOR, | * | |
| ERIC REID, JAMES REID, | * | |
| REID COMMODITIES, LLC, | * | |
| LCH COMMODITIES, LLC, and | * | |
| JLB COMMODITIES, LLC, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM

December 17, 2012

TAURO, J.

I.  Introduction

In its fifteen-count Amended Complaint, Plaintiff Atlantic Acquisitions, LLC ("Plaintiff") brings two counts under the Racketeer Influenced and Corrupt Organizations Act ("RICO") against Defendants James Reid, Eric Reid, and Reid Commodities, LLC ("RICO Defendants"). Plaintiff alleges that RICO Defendants engaged in a fraudulent scheme to divert and conceal profits from a contract ("Project Agreement") for the demolition and salvage work on two industrial plants in Texas.  RICO Defendants move to dismiss both RICO counts.  Because Plaintiff failed to properly plead a pattern of racketeering activity, RICO Defendants' Motion to Dismiss Counts XIV and XV of Plaintiff's First Amended Complaint [#13] is ALLOWED.

x

II.     Factual Background

Plaintiff demolishes and salvages out-of-commission industrial structures.[1] On October 29, 2010, Plaintiff entered into a contract to purchase two out-of-commission industrial plants in Texas, the Bates Plant and Hill Plant.[2] Because Plaintiff was unable to self-finance these purchases, Plaintiff sought out partners for the projects.[3] On December 14, 2010, Plaintiff entered into a Project Agreement with Etco Recycling Corporation ("Etco") and Defendant J.H. Reid to finance the purchases and complete the demolition and salvage work on both plants.[4] Defendant J.H. Reid is a New Jersey corporation controlled by Defendant James Reid and his son Defendant Eric Reid.[5] Defendant Reid Commodities, LLC is an affiliate of J.H. Reid formed specifically for the purpose of carrying out the Project Agreement.[6] Together, Defendants James Reid, Eric Reid, and Reid Commodities, LLC constitute the RICO Defendants.

The heart of Plaintiff's RICO claims is that RICO Defendants participated in a fraudulent scheme to divert profits from the Bates and Hill projects away from Plaintiff and Etco and into their own pockets.[7] Under the Project Agreement, the profits generated from the demolition and salvage of the Plants were to be distributed: forty-seven percent to J.H. Reid, forty-three percent

---

[1] Am. Compl. ¶ 2 [#11].

[2] Am. Compl. ¶¶ 12, 13.

[3] Am. Compl. ¶ 15.

[4] Am. Compl. ¶ 16.

[5] Am. Compl. ¶¶ 3-5.

[6] Am. Compl. ¶ 6.

[7] Am. Compl. ¶¶ 138, 144, 147.

to Plaintiff, and ten percent to Etco.[8]  The parties anticipated profits from the projects of between seven and ten million dollars.[9]  Defendants have yet to distribute any profits to Plaintiff.[10]  As a result, Plaintiff brings this action to recover the profits it believes it is owed under the Project Agreement.

In Counts XIV and XV, Plaintiff brings two claims under RICO, 18 U.S.C. § 1962(a) and 18 U.S.C. § 1962 (c).  Plaintiff alleges that RICO Defendants engaged in a pattern of racketeering activity that involved multiple and related acts of wire fraud.[11]  The acts of wire fraud consisted of interstate telephone calls and emails by RICO Defendants to Plaintiff "on an approximately weekly basis," starting March 15, 2011, and continuing until December 16, 2011.[12]  The telephone calls and emails misrepresented financial information regarding the Bates and Hill projects.[13]  In particular, RICO Defendants (a) under-reported the tonnage of scrap materials, copper, and steel at the Plants, (b) under-reported the revenue derived from the Plants, and (c)

---

[8] Am. Compl. ¶¶ 7, 8.

[9] Am. Compl. ¶¶ 16, 36.

[10] Am. Compl. ¶ 32.

[11] Am. Compl. ¶¶ 135, 144-45.

[12] Am. Compl. ¶¶ 135, 144.  Although Plaintiff alleges that RICO Defendants sent the first fraudulent report on March 15, 2011, Plaintiff also alleges that the wire fraud started in December 2010, when "emails were sent across state lines and used to complete the acquisition of the Hill Plant and Bates Plant . . . ." Am. Compl. ¶ 135.  Plaintiff does not allege that these 2010 emails contained false information or that RICO Defendants sent these emails.  The court's analysis, however, would not change if the court included these earlier emails and accepted that the predicate acts took place over approximately one year rather than nine months.

[13] Am. Compl. ¶¶ 136, 145.

over-reported the expenses incurred during the projects.[14]

RICO Defendants move to dismiss Counts XIV and XV under Federal Rule of Civil Procedure 12(b)(6). They argue that Plaintiff failed to plead: (1) a pattern of racketeering activity, (2) an enterprise, and (3) an investment injury. Because this court finds that Plaintiff failed to properly plead a pattern of racketeering activity, this court need not reach the second and third grounds for dismissal.

III.   Discussion

    A.   Legal Standard

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[15] The court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.[16] The court need not, however, accept the plaintiff's legal conclusions as true.[17] To survive a motion to dismiss, a complaint must

---

[14] Am. Compl. ¶¶ 136, 145. In paragraphs 137 and 146 of the Amended Complaint, Plaintiff alleges the possibility of additional predicate mailings and wire transmissions in Defendants' exclusive control. Plaintiff, however, did not request an additional period of time to conduct discovery and amend its pleadings under New England Data Services v. Becher, 829 F.2d 286, 290-91 (1st Cir. 1987). Plaintiff did not make such a request by motion or in its opposition to RICO Defendants' motion to dismiss. Rather, it appears from Plaintiff's opposition that Plaintiff stands by its pleadings and asks this court to deny dismissal based on the sufficiency of the pattern alleged. This court therefore considers the wire communications alleged in Plaintiff's Amended Complaint as it stands today. See Feinstein v. Resolution Trust Corp., 942 F.2d 34, 43 (1st Cir. 1991) (upholding dismissal of RICO claims where plaintiffs did not ask the court to "stay its hand pending the opportunity for discovery" or seek leave to amend their complaint). As in Feinstein, "there is no sound reason to . . . relieve the [plaintiff] from [its] seemingly deliberate choice to stand or fall upon [its] complaint as pleaded." Id.

[15] Fed. R. Civ. P. 8(a)(2).

[16] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

[17] Id.

allege sufficient facts "to state a claim to relief that is plausible on its face."[18]

B.   Pattern of Racketeering Activity

To state a claim under RICO, Plaintiff must properly plead a pattern of racketeering activity.[19] A "pattern" requires at least two predicate acts of racketeering activity.[20] RICO defines "racketeering activity" as violations of specified federal laws, such as the mail and wire fraud statutes.[21] The predicate acts must also be (1) related and (2) amount to or pose a threat of continued criminal activity.[22] This is the so-called "continuity plus relationship" test.[23] RICO Defendants argue that Plaintiff has not satisfied the "continuity" element. A plaintiff may establish continuity through either the "closed-ended" or "open-ended" approach.[24]

i.   Closed-Ended Continuity

Under the closed-ended approach, Plaintiff must allege predicate acts "extending over a

---

[18] Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This court also notes that Plaintiff failed to plead the predicate acts of wire fraud with the level of specificity required by Rule 9(b) and First Circuit precedent. Becher, 829 F.2d at 290. Plaintiff was the recipient of the allegedly false weekly reports and therefore is not entitled to a relaxed pleading standard. See Efron v. Embassy Suites (P.R.), Inc., 223 F.3d 12, 16 (1st Cir. 2000) (citing id.). Yet, because Defendants have not brought a Rule 9 challenge and because Plaintiff has not sought to amend its pleadings, this court proceeds to analyze whether the facts alleged in the Amended Complaint, taken as true, suffice for a RICO pattern.

[19] Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 233 (1st Cir. 2003) (citing Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985)).

[20] Efron, 223 F.3d at 15.

[21] Id.

[22] Id. (citing H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989)).

[23] Id.

[24] Giuliano v. Fulton, 399 F.3d 381, 387 (1st Cir. 2005).

substantial period of time that amount to a threat of continued criminal activity."[25] Predicate acts extending over "a few weeks or months" are insufficient for closed-ended continuity.[26] Conversely, predicate acts that are numerous and extend over several years may compel a conclusion of closed-ended continuity.[27] "Some cases, however, fall into a middle ground where the duration and extensiveness of the alleged conduct does not easily resolve the issue."[28]

This case falls into the middle ground. Plaintiff alleges predicate acts of wire fraud consisting of interstate telephone calls and emails on "an approximately weekly basis" from March 15, 2011 until December 16, 2011.[29] The alleged predicate acts extend beyond a few weeks or months but are not so numerous and long lasting as to compel a conclusion of closed-ended continuity. In middle ground cases, the First Circuit has consistently declined to find closed-ended continuity where the alleged predicate acts involve "one scheme with a singular objective and a closed group of target victims."[30] "RICO is not aimed at a single narrow criminal episode,

---

[25] Id. (internal quotation marks omitted) (quoting H.J., 492 U.S. at 242).

[26] Efron, 223 F.3d at 15 ("Because RICO was intended by Congress to apply only to enduring criminal conduct, '[p]redicate acts extending over a few weeks or months . . . do not satisfy this requirement.'" quoting H.J., 492 U.S. at 242).

[27] Giuliano, 399 F.3d at 387 ("[W]here the temporal duration of the alleged activity and the alleged number of predicate acts are so extensive that 'common sense compels a conclusion of continuity,' closed-ended continuity should be found." quoting Efron, 223 F.3d at 18).

[28] Id.

[29] Am. Compl. ¶¶ 135, 144; see supra note 12.

[30] Efron, 223 F.3d at 18, 19 ("[C]ombination of 'single, scheme, single injury, and few victims . . . makes it virtually impossible for plaintiffs to state a RICO claim.'"); see also Giuliano, 399 F.3d at 390 ("[W]here a case falls into the middle ground, we have consistently declined to find continuity where the RICO claim concerns a single, narrow scheme targeting few victims."); Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 233 (1st Cir. 2003)); Sys.

even if that episode involves behavior that amounts to several crimes (for example, several unlawful mailings)."[31]

Here, the alleged acts of wire fraud are more appropriately characterized as parts of a single, discrete criminal episode, rather than a pattern of racketeering activity. The acts were narrowly tailored to a single scheme with a singular objective – to divert profits from the Bates and Hill demolition and salvage projects. The alleged fraud arose out of a single contract, the Project Agreement,[32] and involved only two victims, Plaintiff and Etco. The only injury was Plaintiff and Etco's lost profits owed under the Project Agreement. Additionally, the predicate acts took place over approximately nine months, a relatively short period of time.[33] The predicate acts, taken together, "comprise a single effort to facilitate a single financial endeavor."[34] "There is no allegation that anything broader or more far reaching was attempted."[35] This case falls

---

Mgmt., Inc. v. Loiselle, 303 F.3d 100, 105-06 (1st Cir. 2002); Apparel Art Int'l, Inc. v. Jacobson, 967 F.2d 720, 723-24 (1st Cir. 1992).

[31] Loiselle, 303 F.3d at 105 (citing Apparel Art, 967 F.2d at 723).

[32] See Id. at 105-06; Apparel Art, 967 F.2d at 723.

[33] See Efron, 223 F.3d at 19 (twenty-one months was a "relatively modest period of time"); United States v. Pelullo, 964 F.2d 193, 209 (3d Cir. 1992) ("While declining to define with precision the meaning of 'substantial period of time,' we have never found such a period to exist where the racketeering activity occurred over a period of one year or less."); J.D. Marshall Int'l, Inc. v. Redstart, Inc., 935 F.2d 815, 820 (7th Cir. 1991) (thirteen months was a "relatively short period of time"); Kehr Packages, Inc., v. Fidelcor, Inc., 926 F.2d 1406, 1417 (3d Cir. 1991) ("numerous" fraudulent mailings over eight months was insufficient for a pattern); Johnston v. Wilbourn, 760 F. Supp. 578, 588 n. 16 (S.D.Miss. 1991) (citing cases).

[34] Schultz v. Rhode Island Hosp. Trust Nat'l Bank, 94 F.3d 721, 732 (1st Cir. 1996) (internal quotation marks omitted) (quoting Apparel Art, 967 F.2d at 723).

[35] Giuliano, 399 F.3d at 390.

squarely in the <u>Loiselle</u>, <u>Efron</u>, and <u>Apparel Art</u> line of cases rejecting closed-ended continuity. Thus, this court finds no closed-ended continuity.

        ii.     <u>Open-Ended Continuity</u>

For open-ended continuity, Plaintiff must allege that the "'racketeering acts themselves include a specific threat of repetition extending indefinitely into the future [or] . . . are part of an ongoing entity's regular way of doing business.'"[36]  "[S]chemes which have a clear and terminable goal have a natural ending point . . . [and] therefore cannot support a finding of any specific threat of continuity that would constitute open-ended continuity."[37]

Here, Plaintiff does not allege any specific threat of repetition extending indefinitely into the future.  Rather, the alleged scheme had a terminable goal and a natural ending point.  RICO Defendants allegedly used wire fraud to divert profits from the Project Agreement for the Bates and Hill projects.  At the conclusion of the Bates and Hill projects in December 2011, the scheme ended and posed no specific threat of continuing indefinitely.[38]  Plaintiff does not allege that RICO Defendants employed wire fraud in prior or subsequent business transactions.  Nor does Plaintiff allege that wire fraud is part of RICO Defendants' regular way of doing business.  Here, as in

---

[36] <u>Id.</u> at 387 (quoting <u>H.J. Inc. v. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 242 (1989)).

[37] <u>Efron</u>, 223 F.3d at 19 (quoting <u>Vicom, Inc. v. Harbridge Merchant Servs. Inc.</u>, 20 F.3d 771, 782 (7th Cir. 1994)); see <u>Giuliano</u>, 399 F.3d at 391; <u>First Capital Asset Mgmt. v. Satinwood, Inc.</u>, 385 F.3d 159, 180-81 (2d Cir. 2004).

[38] Plaintiff's allegation that RICO Defendants continue to withhold information regarding the projects is not sufficient to establish open-ended continuity.  Plaintiff does not allege any predicate acts in connection with this withholding of information or allege any additional predicate acts after December 2011 whatsoever.  See <u>Giuliano</u>, 399 F.3d at 388 ("[W]e do not credit generic allegations of common law fraud that do not implicate the mails or wires, as these acts do not constitute racketeering activity under RICO. . . . We will not imply or read into the amended complaint the mail or wire connection where it is not alleged specifically.").

Efron, "[t]here is nothing to suggest that defendants would seek to repeat their fraud in other partnerships or similar business settings."[39] Accordingly, Plaintiff has not established open-ended continuity.

IV.     Conclusion

Having carefully considered the Amended Complaint, this court finds that Plaintiff failed to properly plead a pattern of racketeering activity. Plaintiff's allegations "do not demonstrate the kind of broad or ongoing criminal behavior at which the RICO statute was aimed."[40] For the foregoing reasons, RICO Defendants' Motion to Dismiss Counts XIV and XV of Plaintiff's First Amended Complaint [#13] is ALLOWED.


AN ORDER HAS ISSUED.

                                                          /s/ Joseph L. Tauro
                                                       United States District Judge

---

[39] Efron, 223 F.3d at 19.

[40] Id. at 18.